IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2045-FL

| | | |
|---|---|---|
| TORI JAREL NEAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CYNTHIA O. THORNTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on respondent's motion for summary judgment (DE 15) pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the court grants respondent's motion for summary judgment.

## STATEMENT OF THE CASE

Petitioner is a state inmate currently serving a life sentence without parole for first-degree murder. State v. Nelson, 221 N.C. App. 434, 727 S.E.2d 25, 2012 WL 2308492 (2012) On February 25, 2015, North Carolina Department of Public Safety officials charged petitioner, then incarcerated at Harnett Correctional Institution, with the disciplinary offense of using gang-related codes or symbols in a letter, an A 14 offense[1] (Resp't. Ex. 1 (DE-17-1) at 11). Petitioner was given written notice that he would appear before a disciplinary hearing officer ("DHO"). (Id. at 17). On March 11, 2015, the DHO conducted a disciplinary hearing. (Id. at 13). After reviewing the

---

[1] Specifically, an A 14 offense prohibits inmates from "[p]articipat[ing] in, or organiz[ing], whether individually or in concert with others, any gang or Security Threat Group (STG), or participat[ing] in any activity or behavior associated with a Security Threat Group." (Resp't. Ex. 2 (DE 17-2) at 3).

evidence, the DHO determined that petitioner committed the offense. (Id.). The DHO hearing record included the following summary:

> INMATE WAS ADVISED OF HIS RIGHTS AND A SUMMARY WAS READ. INMATE PLED NOT GUILTY TO THE A14 OFFENSE WITH A SUMMARY AS FOLLOWS. SGT. W. DAVIS STATES THAT ON 2-25-15 AT APPROX. 1115 HE REVIEWED A LETTER WRITTEN BY INMATE TORY NELSON THAT WAS RETURNED TO THE INSTITUTION MARKED, " RETURN TO SENDER." UPON REVIEW OF THE LETTER HE OBSERVED THAT INMATE NELSON HAD USED "CC IN THE PLACE OF WORDS THAT ENDED IN "CK." SGT. DAVIS, THE FACILITY STG [SECURITY THREAT GROUP] OFFICER, DETERMINED THIS TO BE RELATED TO THE STG CRIPS [GANG] WHO USES THIS PRACTICE AS A WAY OF DISRESPECTING THE UBN [UNITED BLOOD NATION]. INMATE NELSON MADE A WRITTEN STATEMENT. HE REQUESTED WRITTEN STATEMENTS FROM INMATES JASON TOMAS, WILLIAM HYMAN, AND PATRICK BLUE. HE REQUESTED SAME AS LIVE WITNESSES. HE REQUESTED EVIDENCE BUT DID NOT INDICATE WHAT HE WANTED. HE DID REQUEST STAFF ASSISTANCE WHICH WAS PROVIDED BY OFFICER L. FOWLER. INMATE STATES THE WAY HE WRITES AND SPELLS IS THE WAY HE GREW UP. THAT IS THE WAY EVERYBODY FROM HIS SIDE OF TOWN WRITES. THAT'S HOW HE EXPRESSES HIMSELF AND HAS NOTHING TO DO WITH ANY GANG BECAUSE HE IS NOT IN A GANG. INMATE VERBALLY STATED THE SAME DURING THE HEARING. INMATE P. BLUE STATES HE HAS KNOWLEDGE OF THIS LETTER. HE IS FAMILIAR WITH STREET TALK BUT HE IS NOT IN A GANG. HE DOES USE STREET TALK. INMATE W. HYMAN STATES HE IS NOT SURE OF THE CONTENTS OF THE LETTER BECAUSE HE WAS NOT THERE WHEN IT WAS WRITTEN, NOR IS HE TOO FAMILIAR WITH INMATE NELSON. HE STATES WHAT WAS EXPLAINED TO HIM AS IN THE LETTER IS SOMETIME USED AS SLANG OR A SHORT WAY OF USING THE WORD. THAT'S ALL HE CAN SAY. INMATE J. THOMAS WROTE, "NO COMMENT." I ASKED I/M NELSON WHAT HE WANTED AS EVIDENCE AS IS REQUIRED BY POLICY. HE INDICATED THE LETTER IN QUESTION WHICH WAS SHARED WITH HIM. NONE OF THE REQUESTED LIVE WITNESSES WERE CALLED TO APPEAR AS ONE REFUSED TO WRITE A STATEMENT AND THE

> REMAINING TWO INDICATED THEY HAD NOT SEEN THE LETTER AND HAD LITTLE TO NO KNOWLEDGE REGARDING IT. THE ONLY STATEMENT OF ANY LENGTH WAS INMATE HYMAN. HIS STATEMENT WOULD HAVE MADE ANY TESTIMONY DUPLICATIVE AND REPETITIOUS. BASED ON THE REPORTING PARTY'S STATEMENT AND ALL EVIDENCE PROVIDED I AM FINDING THE INMATE GUILTY WITH PRESUMPTIVE PUNISHMENT IMPOSED TO DETER THIS TYPE OF BEHAVIOR IN THE FUTURE. APPEAL RIGHTS EXPLAINED AND A FORM WAS PROVIDED.

(Id.).

As a result of the DHO's findings, petitioner was sanctioned with the following: (1) 60 days of segregation; (2) 40 days lost of sentence reduction credits; (3) 50 hours extra duty; and (4) 180 days of suspended visitation and canteen privileges. (Id. at 11). On April 16, 2015, petitioner's disciplinary conviction was affirmed on appeal. (Id. at 3). Petitioner did not challenge his disciplinary conviction in North Carolina state courts. (See Pet'r. Resp. (DE 20) at 4).

On March 11, 2016, petitioner filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his disciplinary conviction on the grounds that he was denied due process in his disciplinary proceedings. (Pet. (DE 1) at 2-11). Respondent filed the instant motion for summary judgment on May 18, 2017, and petitioner filed a timely response. In this posture, the issues raised are ripe for adjudication.

## DISCUSSION

A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

3

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Petitioner contends the DHO's decision violated his due process rights. As an initial matter, petitioner did lose 40 days of sentence reduction credits. However, under North Carolina law, sentence reduction credits do not shorten the length of a life sentence but merely apply to custody status, parole eligibility, and potential commutation. Jones v. Keller, 698 S.E.2d 49 (N.C. 2010), cert. denied, 131 S. Ct. 2150, 179. Therefore, petitioner, as an inmate sentenced to life imprisonment in North Carolina, does not have liberty interest in sentence reduction credits. See Waddell v. Dep't of Corr., 680 F.3d 384, 395 (4th Cir. 2012). Because Petitioner does not have a cognizable liberty interest, he fails to state a due process claim. Id.; see, e.g., Bartlett v. Perry, No. 5:14-HC-2046-F, 2015 WL 4910144, at *2 (E.D.N.C. Aug. 17, 2015).

Likewise, petitioner has not exhausted his state court remedies. (Pet'r. Resp. (DE 20) at 4). Therefore, in the alternative, the action is dismissed due to petitioner's failure to exhaust those remedies. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas corpus petition."); Tompkins v. Thomas, No. 5:10-HC-2004-BO, 2010 WL 4735910, at *2 (E.D.N.C. Nov. 15, 2010)

4

(noting that § 2254 petitioner challenging a disciplinary conviction must first challenge those convictions in state court).

Moreover, even if petitioner had a liberty interest and had exhausted his claims, his arguments fail on the merits. The Due Process Clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty interest, such as earned good-time credit, or with deprivation of property. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Under the Wolff standard, an inmate is entitled to the following: (1) written notice of the charges at least 24 hours in advance of the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for disciplinary action; and (3) to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Id. at 564-566.

Decisions by a disciplinary board to revoke good-time credits pass scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Walpole v. Hill, 472 U.S. 445, 454 (1985). Federal courts will not review the accuracy of the disciplinary hearing officer's fact finding de novo or for clear error. See Baker v. Lyles, 904 F.2d 925, 932 (4th Cir. 1990). Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [disciplinary hearing officer]." Id. (quotation omitted).

The evidence presented during petitioner's disciplinary hearing is summarized above, and the court finds that this evidence satisfies the "some evidence" standard, and the Due Process Clause was not violated. See, e.g., Walpole, 472 U.S. at 454–56; Baker, 904 F.2d at 932. As for the remaining Wolff requirements, petitioner received advance written notice of the disciplinary charges

and he received a written statement by the disciplinary hearing officer of the evidence relied on and the reasons for the disciplinary action. Likewise, petitioner was afforded an opportunity to call witnesses. Thus, petitioner has not brought forth evidence establishing a genuine issue of material fact as to a constitutional due process violation.

For these reasons, respondent's motion for summary judgment is ALLOWED, and the instant petition is DISMISSED.

## CONCLUSION

For the aforementioned reasons, respondent's motion for summary judgment (DE 15) is GRANTED. After reviewing the claims presented in the habeas petition in light of the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 20th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge